UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHRISTOPHER MARCO TOCCO,

       Plaintiff,

v.                                Case No.  8:21-cv-399-TPB-SPF

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## **REPORT AND RECOMMENDATION**

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB").  The Commissioner has moved for the Court to partially remand the case under sentence four of 42 U.S.C. § 405(g) (Doc. 26), and Plaintiff opposes the motion (Doc. 27).  The parties have also submitted a joint memorandum (Doc. 29).  Having considered the motion to remand, the parties' memorandum, and the administrative record, the undersigned recommends that the case be remanded in part to the Commissioner for her to direct the Appeals Council to issue a decision that Plaintiff was disabled as of July 9, 2020.  Regarding the contested period of July 18, 2018 through July 8, 2020, the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, and it is recommended that this portion of the Commissioner's decision be affirmed.

## I.      Procedural Background

Plaintiff filed an application for a period of disability and DIB on January 17, 2019 (Tr. 15, 172-78).   The Commissioner denied Plaintiff's claims both initially and upon reconsideration (*see* Tr. 70-106).   Plaintiff then requested an administrative hearing (Tr. 121-22).   Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 36-69).   Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claim for benefits (Tr. 12-35).   Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1-6).   Plaintiff then timely filed a complaint with this Court (Doc. 1).

On April 1, 2022, the Commissioner filed an Opposed Motion for Entry of Judgment with Remand (Doc. 26).   The Commissioner seeks remand under sentence four of 42 U.S.C. § 405(g), stating:

> Upon remand, the Appeals Council will issue a partially favorable decision, finding that Medical-Vocational Rule 202.06 directs a finding of "disabled" as of July 9, 2020, the date the hearing decision was issued, through application of the borderline age rule.   For the period prior to July 9, 2020, the Appeals Council plans to adopt the ALJ's findings and find that Medical-Vocational Rule 202.14 provides a framework of "not disabled."

(Doc. 26 at 1).   Plaintiff "consents to the Commissioner's offer finding Mr. Tocco disabled pursuant to Medical-Vocational Rule 202.06 as of July 9, 2020[.]" (Doc. 27 at 1). But he "objects to the Commissioner's plan to adopt the ALJ's findings and find that Mr. Tocco was not disabled from July 18, 2018, his alleged onset date, through July 8, 2020." (*Id.* at 1-2).   At the Court's request, the parties filed a joint memorandum addressing whether substantial evidence supports the ALJ's decision that Plaintiff was not disabled from July

18, 2018, through July 8, 2020 (Doc. 29).  The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II.    Factual Background and the ALJ's Decision

Plaintiff, who was born on December 19, 1965, claimed disability beginning July 18, 2018 (Tr. 17, 39).  Plaintiff has a high school education and has been married for 30 years with one adult daughter.  In June 2018, Plaintiff quit his job as a facilities director at a New Jersey charter K-8 school, which he had held for 20 years (Tr. 44).  In his words, he "struggled through and then finally the breaking point was in June of 2018." (*Id.*). Plaintiff testified he had a panic attack at work, and his blood pressure spiked to 200/104 (Tr. 45).  Despite attempting to return to work, Plaintiff finally "called out sick for the first time in 20-some years.  [The doctor] gave me a doctor's note not to return to work." (*Id.*). The ALJ characterized Plaintiff's past relevant work as a facilities director (Tr. 28). Plaintiff alleged disability due to hypothyroidism, Graves disease, COPD, asthma, uncontrolled hypertension, hyperlipidemia, anxiety, and knee and back impairments (Tr. 71).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through December 31, 2023 and had not engaged in substantial gainful activity since July 18, 2018, the alleged onset date (Tr. 17).  After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: osteoarthritis of the bilateral knees, degenerative disc disease of the lumbar spine, hypothyroidism, obesity, bipolar disorder, and generalized anxiety disorder (Tr. 18).  Notwithstanding the noted impairments, the ALJ

determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 18).  The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work with these limitations:

> [H]e can never climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; never work at unprotected heights or around moving mechanical parts; and tolerate occasional exposure to wetness and humidity, extreme cold, extreme heat, and dusts, odors, fumes, and pulmonary irritants.  He can perform simple, routine, and repetitive tasks not at a production rate pace (e.g. assembly line work); make simple work-related decisions; occasionally interact with supervisors and coworkers; never interact with the public; and occasionally tolerate changes in a routine work setting.

(Tr. 22).

In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 26). Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past relevant work but could work as a microfilm mounter, label coder, and sorter, all jobs that exist in significant numbers in the national economy (Tr. 29-30).  Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 30).

4

### III.   Legal Standard

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

The Social Security Administration, to regularize the adjudicative process, promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.  If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ must determine, in sequence, the following:  whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, i.e., one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work.  If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience.  20 C.F.R.

§§ 404.1520(a), 416.920(a).  A claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision.  *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).  The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal.  *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

## IV.    Analysis

### A.    Motion to Remand to Apply Borderline Age Rule

The Commissioner seeks a partial remand under sentence four of 42 U.S.C. § 405(g) for the Appeals Council to apply the borderline age rule and find that Plaintiff was disabled as of July 9, 2020, but not before (Doc. 26).  Plaintiff agrees that his case should be remanded and that the borderline age rule applies as of July 9, 2020.  However, for the period from July 18, 2018, through July 8, 2020, Plaintiff requests a new administrative hearing, including additional testimony from a VE regarding the mental demands of working, and a new administrative decision (Doc. 27).

Section 405(g) permits judicial review of the Commissioner's final decisions and specifies the actions the district court can take when the case reaches it.  Sentence four of 405(g) states that "[t]he court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).  Sentence four empowers the district court to remand a case to correct an error made by the Commissioner, including when the Commissioner's decision is not supported by substantial evidence, or the Commissioner (or the ALJ) incorrectly applies the law to a disability claim. *See Jackson v. Chater*, 99 F.3d 1086, 1092 (11th Cir. 1996); *Boges v. Comm'r of Soc. Sec.*, No. 6:13-cv-1634-Orl-TBS, 2014 WL 12620848, at *1 (M.D. Fla. Oct. 8, 2014).  Additionally, the Court has the authority to limit the scope of remand to the Commissioner by specifying the actions to be, and not to be, taken by the ALJ. *Shaff v. Comm'r of Soc. Sec.*, No. 6:15-cv-1350-Orl-TBS, 2016 WL 1714524, at * 2 (M.D.

Fla. Apr. 29, 2016) (citing *Sullivan v. Hudson*, 490 U.S. 877, 885 (1989) ("[T]he district court's remand order will often include detailed instructions concerning the scope of the remand. . . . Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review.")). "In other words, the Commissioner is implicitly limited by any findings of the district court regarding the application for disability benefits." *Id.* (citing *Thompson v. Astrue*, 583 F.Supp.2d 472, 475 (S.D.N.Y. 2008)).

For context, when the disability evaluation process reaches step five, an ALJ must consider a claimant's RFC along with vocational factors, such as age, in determining whether the claimant is able to do other work. 20 C.F.R. § 404.1520(a)(4)(v). In applying the grid rules, which were promulgated to improve the uniformity and efficiency of step five determinations, a claimant's age is considered by reference to one of three categories. *Heckler v. Campbell*, 461 U.S. 458, 461 (1983); *see* 20 C.F.R. § 404.1563. The following age categories are relevant:

> 1) Person closely approaching advanced age. If you are closely approaching advanced age (age 50–54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.
>
> 2) Person of advanced age. We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work. We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older).

20 C.F.R. § 404.1563(d), (e).

The regulations provide that a "borderline situation" exists where (1) the claimant is "within a few days to a few months" of the next older age category; and (2) applying

the grid rules for that older age category would result in a determination that the claimant is disabled.  20 C.F.R. § 404.1563(b).  The ALJ must "consider" whether the next older age category should be used when those two conditions are present.  *Id.*

As to the first condition, on July 9, 2020, the date the ALJ issued his decision, Plaintiff was 54 years and seven months old – five months shy of his 55th birthday.  *See, e.g., Dubyna v. Colvin*, No. 8:13–CV–1966–T–TGW, 2014 WL 4660363, at *8 (M.D. Fla. Sept. 17, 2014) ("Although there is no bright line rule for how many months is borderline, the predominant view is that six months from the next age category is the outer limit.").  As for the second condition, it is undisputed that when Plaintiff turned 55, he would have been found disabled based on grid rule 202.06 (Doc. 27 at 1); *see* 20 C.F.R. Part 404, Subpt. P, App. 2 § 202.06.  Plaintiff is properly considered to be in a "borderline situation."

The ALJ was required to "consider whether to use the older age category after evaluating the overall impact of all the factors of [a claimant's] case." 20 C.F.R. § 416.963(b).  Here, the ALJ found that use of the higher age category "is not supported by the limited adverse impact of all factors on the claimant's ability to adjust to other work." (Tr. 29).  Both sides agree this was error.  Consequently, the undersigned recommends granting the Commissioner's motion to remand in part to apply the borderline age rule as of July 9, 2020 and directing the Appeals Council to find Plaintiff disabled as of this date.  As for the objected-to period from July 18, 2018, through July 8, 2020, the undersigned recommends denying the Commissioner's remand motion.[1]

---

[1] For the reasons explained in the next section, addressing the merits of Plaintiff's appeal reaches the same result as granting the Commissioner's motion to remand in full. Plaintiff, however, argues that substantial evidence does not support the ALJ's decision

**B.     ALJ's Evaluation of Plaintiff's Mental Impairments from July 18, 2018, through July 9, 2020**

Regarding the period from July 18, 2018, through July 8, 2020, Plaintiff argues the ALJ erred in finding the mental RFC questionnaire completed by Plaintiff's treating psychiatrist unpersuasive.  According to Plaintiff, the ALJ's decision "does not properly account for 'marked' and 'extreme' limitations found in treating psychiatrist Ivan Mazzorana's mental residual functional capacity questionnaire (Tr. 615-618)." (Doc. 29 at 9).  The Commissioner maintains (through her motion to remand and her portion of the parties' joint memorandum) that the ALJ properly applied the new regulations, and his finding that Dr. Mazzorana's opinion was not persuasive is supported by substantial evidence (*Id*. at 14).

Prior to March 27, 2017, SSA regulations codified the treating physician rule, which required the ALJ to assign controlling weight to a treating physician's opinion if it was well supported and not inconsistent with other record evidence. *See* 20 C.F.R. § 404.1527(c).  Under the treating physician rule, if an ALJ assigned less than controlling weight to a treating physician's opinion, he or she had to provide good cause for doing so. *See Winschel v. Comm'r of Soc. Sec*, 631 F.3d 1176, 1178-79 (11th Cir. 2011). Good cause existed "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory

for the period July 18, 2018, through July 8, 2020, and the undersigned addresses Plaintiff's argument for the sake of completeness.  Additionally, sentence four empowers courts to remand cases to the Commissioner to correct errors.  *See Jackson*, 99 F.3d at 1092. As the undersigned concludes the ALJ did not err in finding Plaintiff not disabled during the contested period, a sentence four remand of Plaintiff's entire case is inappropriate.

or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

But in this case, revised SSA regulations (published on January 18, 2017, and effective on March 27, 2017) apply because Plaintiff filed his claim on January 17, 2019 (*see* Tr. 15). As the SSA explained, "under the old rules, courts reviewing claims tended to focus more on whether the agency sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision ... these courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review, which is intended to be highly deferential to us." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017). The new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources. 20 C.F.R. § 404.1520c(a). As to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). The first two factors, however, are the most important. "Under the new rule, the SSA will consider the persuasiveness of all medical opinions and evaluate them primarily on the basis of supportability and consistency." *Mackey v. Saul*, 2020 WL 376995, at *4, n. 2 (D.S.C. Jan. 6, 2020), citing 20 C.F.R. § 404.1520c(a),(c)(1)-(2) (while there are several factors ALJ must consider, "[t]he most important factors ... are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section).").

The new regulations also change the standards an ALJ applies when articulating his or her assessment of medical source opinions. As mentioned above, an ALJ need not assign specific evidentiary weight to medical opinions based on their source. *See Tucker v. Saul*, No. 4:19-cv-759, 2020 WL 3489427, at *6 (N.D. Ala. June 26, 2020). And while the ALJ must explain how he or she considered the supportability and consistency factors, the ALJ need not explain how he or she considered the other three factors.[2] 20 C.F.R. § 404.1520c(b)(2). Under the new regulations, the ALJ does not need to "give good reasons" for the weight he or she assigns to treating source opinions. *Compare* 20 C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion.") *with* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). In *Harner, v. Social Security Administration, Commissioner*, No. 21-12148 (11th Cir. June 27, 2022), the Eleventh Circuit recently affirmed that these new regulations eliminate the treating physician rule.

Plaintiff sought mental health treatment from Dr. Mazzorana's psychiatry practice from January 2019, through April 2020 (*see* Tr. 481-87, 488-95, 552-58, 559-75, 592-618). In January 2019, social worker Susan Cobb, L.C.S.W., saw Plaintiff for his initial mental health assessment and reported Plaintiff "speaks of losing his temper strongly, daily

---

[2] The exception is when the record contains differing but equally persuasive medical opinions or prior administrative medical findings about the same issue. *See* 20 C.F.R. § 404.1520c(b)(3).

consumption of ETOH, anxiety, insomnia, shaking, having trouble breathing and stressed.  He wants verification of his situation for disability." (Tr. 481)  He had little insight and poor judgment (Tr. 482).  Ms. Cook wrote that Plaintiff's mood was "demanding and wanting to have disability evidence given by our office to attorneys." (Tr. 481).  She recommended therapy and medication (Tr. 483).

In February 20, 2019, Plaintiff saw psychiatric nurse practitioner Karen Woods, A.R.N.P., who recapped Plaintiff's history:  he had worked for 20 years at a New Jersey charter school but moved to Florida with his wife in July 2018 after quitting; he was so stressed at his job he still had "workmares" about it at night; he required Xanax to get to sleep; and anxiety caused his blood pressure to spike (Tr. 563).  Plaintiff's mood was anxious, he lost his train of thought, and his thought content was "worrisome." (Tr. 565).  Ms. Woods assessed him with generalized anxiety disorder and requested the medical records and lab results from his primary care provider in New Jersey to help Dr. Mazzorana rule out bipolar disorder (Tr. 566).

At Plaintiff's April 2019 appointment, his first with Dr. Mazzorana (in fact, this was his first with any psychiatrist), the doctor noted Plaintiff's history of "extreme mood swings and mania where he will go out for cigarettes and not return home for four days at a time." (Tr. 568).  The psychiatrist diagnosed Plaintiff with bipolar disorder and prescribed Depakote, Xanax, and quetiapine (Seroquel) (Tr. 569).  By the next month, Plaintiff reported, "I feel better." (Tr. 570).  Dr. Mazzorana wrote, "he's doing much better on current medications but was unable to tolerate Seroquel." (*Id*.).  His mind was

13

"not as racing" and his mood "feels that it is more stable." (*Id.*).  Dr. Mazzorana switched Plaintiff from Seroquel to Alprazolam (Tr. 571).

Shortly after Dr. Mazzorana diagnosed Plaintiff with bipolar disorder in April 2019, Plaintiff attended a consultative psychological evaluation with Sara Malowitz, Psy.D. at the agency's request (Tr. 516-19).  Dr. Malowitz did not have access to Dr. Mazzorana's treatment records when writing her evaluation.  She interviewed Plaintiff and conducted a mental health evaluation, observing Plaintiff had "adequate" attention and concentration, mental flexibility, receptive and expressive language, remote and immediate memory, social skills, judgment related to problem solving, and insight (Tr. 519).  Plaintiff had no significant difficulties processing information, had fair abstract reasoning skills, average overall intelligence, and had coherent, logical, and goal directed thought processes (*Id.*).  Dr. Malowitz assessed Plaintiff with major depressive disorder and adjustment disorder with anxiety, impairments she concluded "appear to be moderately impacting activities of daily living, vocational performance, and interpersonal interactions.  Current prognosis for Mr. Tocco is guarded." (*Id.*).

In June 2019, Plaintiff returned to Dr. Mazzorana and confirmed he was "doing better" on medication (Tr. 602).  His insight and judgment were intact, his thought process organized, and his mood stable.  However, Plaintiff had destabilized by his August 2019 appointment (Tr. 605).  He reported mood swings and increased irritability, yet Dr. Mazzorana noted his thought process was organized, his speech normal, he was oriented in all spheres, his insight and judgment were intact, and he had a good fund of knowledge (*Id.*).  The doctor increased Plaintiff's dosage of Alprazolam and asked him to follow up

14

in three months (Tr. 607).  After that, Plaintiff saw Dr. Mazzorana two more times, in November 2019, and February 2020.  At both visits, Plaintiff said he was feeling better on his medication, was less depressed, less irritable, and was sleeping better (Tr. 608, 611).

Against this treatment backdrop, Dr. Mazzorana completed a mental RFC questionnaire at Plaintiff's request in April 2020 (Tr. 615-18).  He opined Plaintiff had severe bipolar disorder that would likely deteriorate under workplace stress (Tr. 618).  Overall, out of 16 areas of mental functioning, Dr. Mazzorana checked boxes indicating Plaintiff had extreme limitations (meaning he was unable to function over 50% of the workday or work week) in four areas, marked limitations (unable to function from 26% to 50% of the workday or work week) in seven areas, and moderate limitations (unable to function from 11% to 25% of the workday or work week) in five areas.[3]

In assessing Plaintiff's RFC, the ALJ reviewed these treatment records and summarized Dr. Mazzorana's mental RFC questionnaire.  The ALJ found Dr. Mazzorana's opinion not persuasive, because "his own treatment notes do not support the extreme limitations he assessed.  Indeed, he routinely observed organized thought process, normal speech, intact recall, and intact insight and judgment." (Tr. 28)  The ALJ

---

[3] Dr. Mazzorana opined Plaintiff had extreme limitations in his ability to accept instruction; process subjective information and use appropriate judgment; respond appropriately to changes in work setting; and tolerate customary work pressures.  Plaintiff had marked limitations in his ability to coordinate with others without distracting them; respond appropriately to co-workers; maintain socially appropriate behavior in relation to the public; cooperate with coworkers without being distracted; carry through instructions and complete tasks independently; perform at expected production levels; and behave predictably, reliably, and in an emotionally stable manner.  Plaintiff's areas of moderate limitations were his ability to perform work tasks at a consistent pace; maintain attention and concentration; remember procedures and instructions; be aware of normal hazards and take precautions; and maintain personal appearance and hygiene (Tr. 615-17).

continued: "Dr. Mazzorana's opinion is not consistent with the evidence as a whole, which documents some persistent signs and symptoms but improvement with medication adjustments." (*Id.*).   Regarding Dr. Malowitz's opinion, the ALJ found it "somewhat persuasive, as it is generally consistent with the totality of the mental health evidence, which reflects some persistent signs and symptoms but improvement with medication." (Tr. 28)  But overall, Dr. Malowitz's "opinion is vague, making it of limited value in analyzing the claimant's specific work-related limitations." (*Id.*).

Although Plaintiff argues the ALJ "failed to adequately explain how the supportability and consistency factors were considered in his assessment of Dr. Mazzorana's treating source mental health opinion (Tr. 615-618)" (Doc. 29 at 11), the undersigned disagrees.  Under the new regulations, "supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1).  "Consistency" refers to the principle that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).  Put differently, the ALJ must analyze whether the medical source's opinion is (1) supported by the source's own records, and (2) consistent with the other evidence of record.  *See Cook v.*

*Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

Here, the ALJ followed the regulations and articulated that Dr. Mazzorana's RFC questionnaire was both unsupported by his own treatment notes and inconsistent with Dr. Malowicz's findings, and the substantial evidence summarized above supports this. Although Plaintiff suggests the ALJ erred by relying on the one hand on Dr. Malowitz's findings in discounting Dr. Mazzorana's opinion, while on the other discounting Dr. Malowitz's opinion as vague, other than 20 C.F.R. § 404.1520c (regarding how the agency considers medical evidence), Plaintiff cites no authority in his portion of the parties' joint brief (Doc. 29 at 8-12).  Plaintiff's implication that the ALJ must choose which opinion (Dr. Mazzorana or Dr. Malowitz's) to assign more weight and articulate this in his decision misconstrues the revised regulations, which state that the Commissioner "will not defer *or give any specific evidentiary weight*, including controlling weight, to any medical opinion(s) or prior administrative finding(s), including those from [the claimant's] own medical sources."  20 C.F.R. § 404.1520c(a) (emphasis added).

In the end, substantial evidence supports the ALJ's decision.  Plaintiff offers no specific evidence undermining the ALJ's RFC determination for the period of July 18, 2018, through July 8, 2020.  *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997) (the claimant "bears the burden of proving he is disabled, and, consequently, he is responsible for producing evidence to support his claim.").  A claimant's RFC is a formulation reserved for the ALJ, who, of course, must support his findings with substantial evidence. *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's

residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Cooper v. Astrue*, 373 F. App'x 961, 962 (11th Cir. 2010) (the assessment of a claimant's RFC and corresponding limitations are "within the province of the ALJ, not a doctor.").

The undersigned reiterates that, when reviewing an ALJ's decision, the Court's job is to determine whether the administrative record contains substantial evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, the Court is not permitted to reweigh the evidence or substitute its own judgment for that of the ALJ even if the Court finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). On this record, Plaintiff's argument fails.

## V.    Conclusion

Accordingly, for the foregoing reasons, it is hereby

RECOMMENDED:

1.   The Commissioner's Opposed Motion for Entry of Judgment with Remand (Doc. 26) be GRANTED to the extent that the case be remanded under sentence four of 42 U.S.C. § 405(g) for the Appeals Council to issue a partially favorable decision, finding that Medical-Vocational Rule 202.06 directs a finding of "disabled" as of July 9, 2020.

2.    For the period from July 18, 2018, through July 8, 2020, the Opposed Motion for Entry of Judgment with Remand (Doc. 26) be DENIED and the decision of the Commissioner be AFFIRMED.

3.  The Clerk be directed to enter final judgment in favor of PLAINTIFF and close the case.

IT IS SO REPORTED in Tampa, Florida, on July 28, 2022.


SEAN P. FLYNN
UNITED STATES MAGISTRATE JUDGE


**<u>NOTICE TO PARTIES</u>**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.  A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.